STEVE M. VARHOLA
LYMAN LAW FIRM
227 West Monroe Street, Suite 2650
Chicago, Illinois 60606
Telephone: (312) 762-9517

Attorneys for Plaintiff
1ST CLASS LEGAL (I.S.), LTD.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

| | |
|---|---|
| 1ST CLASS LEGAL (I.S.), LTD., A foreign corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RAYMOND NIRO, individually and doing business as NIRO, HALLER & NIRO, an Illinois Law Partnership, NIRO, HALLER & NIRO, an Illinois Law Partnership, and NIRO LAW, LTD., an Illinois Corporation, formerly known as NIRO, HALLER & NIRO, LTD., <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR BREACH OF CONTRACT AND ACCOUNTING; DEMAND FOR JURY TRIAL** |

Plaintiff 1st CLASS LEGAL (I.S.), LTD. (hereinafter "Plaintiff" or "1CL") complains and alleges as follows:

COMPLAINT AND JURY DEMAND
CASE NO. _____

1

## THE PARTIES

1.      Plaintiff 1CL is a corporation formed, organized under the laws of and domiciled in the United Kingdom, and all times has had and continues to have its principal place of business in Shrewsbury and the County of Shropshire in England.

2.      Defendant Ray Niro ("Defendant Niro") is an individual who is licensed as an attorney in the State of Illinois. Plaintiff is informed and believes and thereon alleges that Defendant Niro resides in the United States and, specifically in the State of Illinois, and is either a partner, shareholder or member of Defendants NHN and/or NL (as described hereinafter).

3.      Defendant Niro, Haller & Niro (hereinafter "Defendant NHN"), an Illinois law partnership has its principal place of business in Chicago, Illinois. Plaintiff is informed and believes and thereon alleges that at the time of entering into the written agreements described hereinafter, Defendant NHN was operating as a law partnership for reasons stated hereinafter, and that Defendant Niro was a partner of Defendant NHN.

4.      Defendant Niro Law, Ltd. (hereinafter "Defendant NL"), is an Illinois corporation with its principal place of business in Chicago, Illinois. Plaintiff is informed and believes that Defendants NL and NHN have such an identity of interest and common ownership and apparently are being used interchangeably with respect to representation of clients, correspondence and written agreements such that there was such a unity of interest and control between these Defendants and the other individual entities that these entities should be disregarded and should be treated collectively as a non-corporate entity of which Defendant Niro is an owner and/or partner. There may be other owners and/or partners of Defendants NL and NHN who have not yet been identified to Plaintiff and, upon discovery of such, Plaintiff may seek leave from the Court to amend this complaint to join them as Defendants.

5. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this complaint, Defendants were the agents and/or employees of their co-Defendants, and in doing the things alleged in this complaint were acting within the course and scope of that agency and/or employment. Defendant Niro, Defendant NL, and Defendant NHN shall hereinafter be collectively referred to as "Defendants".

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.§ 1332(a)(2) since the Plaintiff is a citizen of a foreign country (and has no office of business in the United States) and all of the Defendants reside in the United States and specifically in Illinois. Therefore, there is complete diversity of citizenship between the Plaintiff (on the one hand) and all of the Defendants (on the other hand), and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Venue in this District is proper pursuant to 28 U.S.C. § 1391 in that the Defendants reside or may be found in general area of Chicago, Illinois (hereinafter "District"), a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and the Defendants transact business in this District.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

8. For many years, Plaintiff has been and continues to be in the business of providing funding to plaintiff attorneys, such as the Defendants in this case, to pursue cost-intensive, complex, contingency fee-based litigation. Specifically, Plaintiff will loan money to attorneys who have significant monetary claims for the purpose of advancing costs and expenses for such litigation in consideration of the attorneys agreeing to pay back those loans pursuant to written agreement out of contingency fees received. As a condition for providing

such funding, the attorneys would have to provide Plaintiff with all "relevant information" about the claims in order for Plaintiff to properly assess the risk since payment would only be recovered if the litigation was successful. The Plaintiff would also arrange for insurance to cover the risk that the litigation would be totally unsuccessful in order to cover the loss of the actually funding amount. In all such instances, the litigation may not have been able to proceed without the funding provided by Plaintiff since the costs for such things as expert witness fees are so significant.

9. In 2011, Plaintiff entered into a written Master Loan Agreement (hereinafter "Master Loan Agreement") with Defendant Niro, Haller & Niro for the purpose of Plaintiff loaning loan said defendant significant funds from Plaintiff for the purpose of utilizing those funds to pay for the costs and other expense of pursuing claims for their identified clients in the United States courts and as more specifically described hereinafter. A true and accurate copy of the Master Loan Agreement is attached hereto, incorporated herein by reference and labelled Exhibit A. Pursuant to the Master Loan Agreement and as funding was requested from different claimants represented by Defendants, a written "Case Specific Loan Agreement" would be entered into between Plaintiff and Defendant Niro, Haller & Niro with respect to funding pertaining to specific clients of said defendant and said agreements were incorporated into the Master Loan Agreement. Specifically, Plaintiff and Defendants entered into three Case Specific Loan Agreements for the following claimants: Oplus Technologies Corporation (hereinafter "Oplus"), Cascades Computer Innovation, LLC (hereinafter "Cascades"), and 21 SRL (hereinafter respectively referred to as "Oplus CSLA", Cascades CSLA, and 21SRL CSRL, and collectively referred to the "Case Specific Loan Agreements"). A true and accurate copy of each of said Case Specific Loan Agreements is attached hereto, incorporated herein by

reference and labelled Exhibits B, C, and D, respectively. The Master Loan Agreement and Case Specific Loan Agreements, which were incorporated into the Master Loan Agreement, shall hereinafter be collectively be referred to as the "Agreement".

10.     Plaintiff loaned Defendants significant funds pursuant to the Agreement. Because of the cost of obtaining those funds, the cost of the aforesaid insurance and other costs, the gross amount funded for all of the Case Specific Loan Agreements, collectively, was $8,861,675 (inclusive of lender's costs) and the net amount actually transferred to Defendants was approximately $3,540,000. The Agreement was between the Plaintiff and Defendants and provided that to the extent that the litigation was successful and Defendants received a contingency fee, Plaintiff would receive a payment of an amount in excess to the amount funded from the contingency fee received by Defendants. In most instances, the client of Defendants involved in the specific litigation were not aware of the Agreement since the client was not party to the Agreement. As indicated above, the Agreement provided that if there was no fee recovery by Defendants, the Defendants would be under no obligation to repay the funding and there would be no recourse. The Agreement provides that it is to be enforced pursuant to laws of England, which allows for such transactions.

11.     Plaintiff learned that Defendants have earned and received contingency fees in some of the underlying lawsuits which were the subject of the Agreement. Defendants, however, have failed and refused to pay Plaintiff the amounts owed them under the Agreement even in the face of Plaintiffs repeated requests for the same.

12.     Additionally, the Agreement required the Defendants to provide Plaintiffs with periodic status reports containing all "Relevant Facts" (as defined more particularly below) about underlying lawsuits including the types of actions, the bases for the claims, the prospects

for success and factors bearing on the prospects for success. Plaintiff required this information for three reasons: (1) to be able to evaluate the business prospects of providing initial funding for any of the lawsuits and/or additional funding thereafter should it become necessary; (2) to be able to obtain insurance against the risks of providing such funding; and (3) to determine whether any of the underlying lawsuits were resolved with a contingency fee earned such that the Defendants would be obligated to repay Plaintiffs their loans pursuant to the terms of the agreement. The Agreement therefore imposed an initial and a continuing obligation on Defendants to provide Plaintiff with such "Relevant Facts." Defendants breached their agreement with Plaintiff by failing and refusing to provide Plaintiff with such "Relevant Facts." These "Relevant Facts" lie uniquely within the knowledge and possession of the defendants. Plaintiff was informed by Defendants that there have been settlements in subject litigation which would have resulted in payment to Plaintiff in the amount of at least $450,000 pursuant to the provisions of the Agreement. Plaintiff, however, is presently unaware of the total amount it is owed since Defendants have refused to provide any accounting of the various litigation matters which are the subject of the Agreement. Certainly, the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff comes now seeking two general forms of relief: (1) compensatory damages resulting from Defendants breach of the Agreement; and (2) an equitable accounting to determine the amount by which it has been damaged.

## COUNT I

## BREACH OF WRITTEN CONTRACT

13. Plaintiff restates, realleges and incorporates herein by reference all of the allegations contained in all of the foregoing paragraphs.

14. Plaintiff and Defendants entered into the Master Loan Agreement on December 15, 2011. According to the provisions of the Master Loan Agreement, Plaintiff agreed to loan money to Defendant NHN as "borrower", and that borrowed funds were to be used "exclusively in connection with the litigation that the borrower undertakes on behalf of its clients and that "the specific terms of each loan and remuneration to the Lender (Plaintiff 1CL) for the provision of the loans are set out in the Case Specific Loan Agreements (hereinafter "CSLA") to this Master Loan Agreement." The Master Loan Agreement does not describe Defendant NHN as a corporation, partnership or unincorporated association. The "Lender" in the Master Loan Agreement was Plaintiff 1CL.

15. From the date of the Agreements until on or about 2014, Plaintiff made loans to the Defendants so that the net amount funded (after deduction for all costs of obtaining such funds) was in the total amount of approximately $3,540,000 under the Master Loan Agreement and the separate Case Specific Loan Agreements described above. These Case Specific Loan Agreements are identified as OPLUS, 21SRL and Cascades and net funds actually transferred to Defendants to each, respectively, were $1,600,000; $720,000; and $1,220,000.

16. Defendants reported having reached a resolution of some of the underlying lawsuits related to the various Case Specific Loan Agreements. Following such resolution of those claims, Defendants reported having received in excess of $4.5 Million collectively in settlements and they have not paid Plaintiff fees due under the Agreement.

17. Under the terms of the Agreement, ***Defendants are obligated to pay Plaintiff 10% of the foregoing contingency fees within 30 days of their receipt***. That obligation arose pursuant to the Master Loan Agreement as follows (see Exhibit A at ¶¶ 13-14 at p.8):

**Loan Cost**

13. The case specific schedule(s) to this agreement set out the terms of the remuneration to be paid by the Borrower to the Lender at or within a maximum of 30 days from the receipt by the Borrower of its contingent fee payable from any Claims Proceeds.

13.1 If the Borrower fails to pay the whole or any part of any sum payable under this Agreement or a CSLA on the due date such as, but not limited to, the remuneration due to the Lender following the collection of Claim Proceeds in any Proceeding as specified in a CSLA, the Borrower shall pay interest on the amount unpaid at the rate of fifteen percent per annum from the due date until the date of actual payment and whether before or after demand or judgment. Such interest shall be calculated on a day to day basis and on a year of 365 days.

13.2 All sums payable by the Borrower hereunder or flowing from a CSLA shall be paid without set-off, deduction or withholding whatsoever, provided that in the event that the Borrower is required under applicable law to make any withholding from any sum payable hereunder, it shall do so and Lender shall be responsible for the payment of any taxes or other fees with respect to such amount.

**Loan Repayment**

14. The Borrower shall repay solely from, and as it receives, its contingent fee from the claims Proceeds, an amount equal to 10% of the Claim Proceeds from the underlying Legal Proceedings as detailed in the CSLA. In no event shall Borrower be required to repay any amounts in excess of such amounts. Notwithstanding anything to the contrary in this Agreement, in no event shall Borrower or any partner or shareholder of Borrower be liable to Lender for any amounts in excess of 10% of the Claims Proceeds, plus any interest that may accrue for late payment. Lender acknowledges and understands that, in the event the amount of the loan exceeds 10% of the Claims Proceeds, it will not be entitled to recover the deficiency from Borrower or any other person. Apart from the express representations and warranties in this Agreement, neither Borrower nor any other person has given any warranties or provided any guarantees as to the potential success of the Proceedings or the amount, if any, of the Claims Proceeds. Borrower expressly disclaims any implied warranties or any guarantees as to the results of the

proceedings. Lender understands that there is inherent risk in all litigation and accepts that risk in making the loan.

18. Defendants have failed and refused to perform their obligations for payment under the Agreement thereby constituting breach of the same. Plaintiff is presently unaware of the total extent of its damages resulting from the breach, except that the amount exceeds $450,000.

19. In addition, Defendants were obligated under the Master Loan Agreement to keep Plaintiff apprised of "Relevant Facts" pertaining to the underlying lawsuits for which it would provide or has provided funding. According to the Master Loan Agreement (at p.3) the term "Relevant Facts" means ". . . all facts and matters that are relevant or material to the Proceedings of which the Borrower is aware at the applicable time including (but without limitation) any potential right of set-off or counterclaim (or similar right) against the Borrower's client by any party and in particular, (but without limitation) any facts and matters that might (i) adversely affect the Borrower's clients case or prospects in the Proceedings; (ii) adversely affect the case or prospects of any other party or proposed party to the Proceedings; and/or (iii) support the case or prospects of any other party or proposed party to the Proceedings." The reasons for this requirement, among others, are so that Plaintiff could make informed business decisions as to whether to make initial and subsequent loans to fund the lawsuits, to know whether any lawsuits have resolved, and to know whether Defendants have received any contingency fee payments. That obligation arose pursuant to the Master Loan Agreement as follows (see Exhibit A at ¶¶ 21.3-21.6; 31.3-4.2 at pp.7-8; 11-12):

> **The Borrower represents and warrants as follows**
>
> 21.3 the Borrower has informed the Lender of all Relevant Facts in relation to each CSLA or has provided to the Lender all information and documentation requested by the Lender

> from which Lender may determine the Relevant Facts and
>
> 21.4 in Borrower's reasonable judgment, the prospects of success in the Proceedings are good taking into consideration all the information known to the Borrower at that time, and
>
> 21.5 Borrower has no reason to believe the Borrower's client has not disclosed to the Borrower all Relevant Facts and provided to the Borrower any information or documentation requested by the Borrower.
> 21.6 The Borrower has disclosed to the Lender all material facts and matters of which the Borrower is aware beyond publicly available information relevant to the financial condition of any party against whom the Proceedings have or will be taken.
>
> 31.3 The Borrower shall inform the Lender without delay and in any case within 10 working days of all Relevant Facts of which the Borrower becomes aware related to this Agreement or any CSLA that have not previously been disclosed to the Lender and shall provide to the Lender any information or documentation reasonably requested by the Lender subject to the provisions of maintaining client attorney privilege.
>
> 31.4 The Borrower shall:
>
> 31.4.1 keep under constant review the Borrower's clients prospects of success in the Proceedings referred to in each CSLA;
>
> 31.4.2 keep Lender informed of any material developments In the Proceedings or as to other matters that might affect the outcome of the Proceedings of which Borrower is aware;

20. Defendants have failed and refused to perform their obligations under the Master Loan Agreement to keep Plaintiff informed of all "Relevant Facts" and, further, have failed and refused to respond to Plaintiff's specific requests for "Relevant Facts" thereby constituting additional breach of said agreement. Such facts lie uniquely within the knowledge and possession of Defendants and consequently, Plaintiff is presently unaware of the total extent of its damages resulting from the breach and is unable to assess those damages without first

COMPLAINT AND JURY DEMAND
CASE NO. _____

10

obtaining an accounting from Defendants in that regard. However, to the extent that such "Relevant Facts" would have led Plaintiff to stop funding the subject litigation under the Agreement and such litigation was not successful, Plaintiff has been damaged to the extent such funding occurred.

Wherefore, Plaintiff prays for judgment against Defendants in an amount yet to be determined by the Court, but in excess of $450,000, and as more fully set forth below.

## COUNT II

## ACCOUNTING

21. Plaintiff realleges and incorporates herein by reference the allegations contained in the foregoing paragraphs. Defendants have failed and refused to account to Plaintiff for the use of the funds transmitted to them by Plaintiff. Plaintiffs therefore demand and are entitled to a full accounting from Defendants identifying how and where the $3,540,000 in funds provided to them were used or spent. In addition, Plaintiffs demand and are entitled to a full accounting of any and all "Relevant Facts" pertaining to the underlying lawsuits as defined in the Master Loan Agreement. Finally, Plaintiffs demand and are entitled to an accounting of any and all attorney contingency fees received from any of the underlying lawsuits that are the subject of the Master Loan Agreement and the Case Specific Loan Agreements as such information would form the basis Defendants' payment obligations to Plaintiff under the Master Loan Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands relief from Defendants as follows:

1. For an accounting for the use of all funds Plaintiff provided to defendants;

2. For an accounting for all "Relevant Facts" as defined above pursuant to the Master Loan Agreement;

3. For an accounting of all attorney contingency fees received in the underlying lawsuits that are the topic of both the Master Loan Agreement and the Case Specific Loan Agreements.

4. For compensatory damages resulting from Defendants' breach of contract in an amount to be determined according to proof.

5. For pre-judgment and post-judgment interest pursuant to the terms the Master Loan Agreement and in accordance with applicable law;

6. For attorney fees as provided under the terms the Master Loan Agreement and according to the laws of England and Wales and to the extent otherwise provided for under law;

7. For costs of suit herein; and;

8. For any other and further relief as permitted by law.

Dated: June 29, 2016

                                        Respectfully submitted,

                                        1ST CLASS LEGAL (I.S.), LTD.

                                        By: /s/Steve M. Varhola
                                        Steve M. Varhola
                                        LYMAN LAW FIRM
                                        227 West Monroe Street, Suite 2650
                                        Chicago, Illinois 60606
                                        (312) 762-9517

                                        Attorneys for Plaintiff
                                        1st Class Legal

## JURY DEMAND

Plaintiff 1ST Class Legal hereby demands a jury trial on all issues in this action to which it is so entitled.

Dated: June 29, 2016

        1ST CLASS LEGAL (I.S.), LTD.

        By: /s/ Steve M. Varhola
        Steve M. Varhola
        LYMAN LAW FIRM
        227 West Monroe Street, Suite 2650
        Chicago, Illinois 60606
        (312) 762-9517

        Attorneys for Plaintiff
        1st Class Legal

## CERTIFICATE OF SERVICE

      The undersigned, an attorney, certifies that a copy of the foregoing Plaintiff's Complaint will be served upon the following, or an agent thereof, via personal delivery by an individual over the age of 18 who is not a part to this action, and that a notice certifying the same will be filed upon service.

Dated: June 29, 2016

                                                        1ST CLASS LEGAL (I.S.), LTD.


                                                        By:_____
                                                        Steve Varhola
                                                       Attorneys for Plaintiff

**COMPLAINT AND JURY DEMAND**