# Master Loan Agreement

Made this 15th day of December 2011

between

# 1st Class Legal (I.S.) Limited

(the Lender)

and

# Niro, Haller & Niro

(the Borrower)

**Preamble:**

Both parties agree that it is the intention of this master loan agreement to set out the general terms under which the Lender provides funds to the Borrower for use exclusively in connection with litigation that the Borrower undertakes on behalf of its clients. The specific terms of each loan and the remuneration to the Lender for the provision of the loans are set out in the case specific loan agreements to this master loan agreement.

1



**EXHIBIT A**

Definitions - In this Agreement, unless the context otherwise requires, the following words or terms shall have the following meanings:

"1ST Class Legal" means 1st Class Legal (I.S.) Limited with a registered address of: Mercury House, Shrewsbury Business Park, Shrewsbury, Shropshire, SY2 6LG, England, a company registered in England (company registration number 5452812) that is the Lender. All funds being provided by the Lender shall be distributed from the Statutory Trust Client Account of 1st Class Legal. The total funds applicable to this loan shall be designated separately within the 1st Class Legal Statutory Trust Client Account at all times and shall be clearly referenced under the name of the Borrower. The parties to this agreement acknowledge that 1st Class Legal is duly authorised to sign such documents as may be required on behalf of either party – these documents to include but not be limited to applications on behalf of the Borrower for any additional insurance or guarantees as may be required from time to time in relation to this Loan(s) provided and that the cost of such additional insurance or guarantees are shown in the CSLA to this Master Loan Agreement.

"1st Class Legal Client Account" means the 1st Class Legal (I.S.) Limited Statutory Trust Client Account;

"Account Bank" means the bank with which the 1st Class Legal Statutory Trust Client Account is held;

"Accounts" means the accounts of the Borrower in respect of the financial year to the Accounts Date;

"Accounts Date" means the accounts date identified in Schedule 1;

"ATE Policy" means the after the event legal expenses policy or policies of insurance or appropriate financial guarantees between the Lender and the Insurer or Guarantee Provider in a form acceptable to the Lender in its sole discretion or such other security as the Lender in its sole discretion may accept and designated on each CSLA to this agreement;

"ATE Proceeds" means any sum payable by the Insurer pursuant to the ATE Policy;

"Borrower" means the firm of attorneys known as Niro, Haller & Niro with offices at 181 West Madison Street, Suite 4600, Chicago, Illinois, 60602-4515, United States of America.

Borrower's Client Company Shareholding (hereinafter known as "BCCS") means the shareholding in the borrower's client company that has been or is to be purchased by the Lender to the value and extent detailed in the CSLA.

"Business Day" means a day other than a Saturday, Sunday or public holiday on which banks are open for business;

"Case Specific Loan Agreement" (hereinafter referred to as. CSLA) means the loan agreement related to the individual case(s) taken forward by the Borrower on behalf of the Borrower's client and known in each CSLA as the Proceedings. The CSLA forms part of and is to be read in conjunction with this Master Loan Agreement.

"Claim Proceeds" means any sum payable to the Borrower's client pursuant to any judgment or order of the court in the Proceedings and/or pursuant to any binding compromise of the Proceedings;

"Conclusion of the Proceedings" means the conclusion of the Proceedings on the earliest to occur of:

(a) final determination of the Proceedings by a court of first instance; or

(b) a binding compromise, dismissal of the Proceedings; or

(c) the discontinuance or withdrawal of the Proceedings.

"Costs" means amounts advanced by the Lender to the Borrower pursuant to the case specific loan agreement;

"Disbursements" means any expenses as detailed in the case specific loan agreements properly incurred by the Borrower that have been agreed to in writing by the Lender and that are payable by the Lender to the Borrower pursuant to this agreement;

"Drawdown Request" means a drawdown request for the advance of the case specific Loan or any part thereof signed on behalf of the Borrower.

"Drawdown Date" means the date on which the Loan is to be drawn.

2

"Event of Default" means any of the events described in clause 10.2;

"Final Repayment Date" means a date two years from the date of this Agreement or such other period as is agreed to in writing between the parties and noted on the case specific schedule to this agreement;

"Finance Document" means this Agreement, the case specific schedule to this agreement, the ATE Policy and any guarantee or other security document required by the Lender and specified in the case specific schedule to this agreement;

"GAAP" means generally accepted accounting practice in the UK or its equivalent in the United States of America.

"Insurer" means Gable Insurance Company Limited or such other insurer or guarantee provider as may be acceptable to the Lender in its sole discretion;

"Loan" means the loan to be made by the Lender to the Borrower on the terms specified in the case specific loan agreements (CSLA) attached to and forming part of this Agreement;

"Potential Event of Default" means an event or circumstance which with the giving of notice, lapse of time, making of any determination or fulfillment of any other condition, or any combination of the foregoing would be an Event of Default;

"Proceedings" means the proceedings, be they a singular set of proceedings or multiple proceedings, whether issued or not, identified in each case specific loan agreement and shall include any proceedings to enforce any judgment, award, compromise or costs order (including the assessment of costs) made in favour of the Borrower's client but shall exclude without the prior written consent of the Lender:

(a) any appeal whether by the Borrower's client or any other party to the Proceedings against any interlocutory decision of the court or tribunal seised of the Proceedings;

(b) any appeal whether by the Borrower's client or any other party to the Proceedings against any final decision of the court or tribunal seised of the Proceedings;

(c) any claim or counterclaim brought against the Borrower's client by any other party to the Proceedings;

"Facility Amount" means the amount specified in the case specific loan agreements;

"Release Date" means a date as detailed in the case specific schedule to this agreement on which a first release of funds from the 1st Class Legal Client Account is made;

"Release Request" means a request for release of funds from the 1st Class Legal Client Account signed on behalf of the Borrower in substantially the form set out in the case specific schedule to this agreement;

"Relevant Facts" means all facts and matters that are relevant or material to the Proceedings of which the Borrower is aware at the applicable time including (but without limitation) any potential right of set-off or counterclaim (or similar right) against the Borrower's client by any party and in particular, (but without limitation) any facts and matters that might:

(i) adversely affect the Borrower's clients case or prospects in the Proceedings;
(ii) adversely affect the case or prospects of any other party or proposed party to the Proceedings; and/or
(iii) support the case or prospects of any other party or proposed party to the Proceedings;

"Retainer" means the agreement between the Borrower and the Borrower's client pursuant to which the Borrower's client instructs and retains the Borrower to act on its behalf in relation to the Proceedings as detailed in the CSLA;

"The Lender" means 1st Class Legal;

"Warranties" means the warranties set out in clauses 19 to 26 inclusive.

"Win Only Award Fee" means the amount of money charged to the Borrower's client by the Lender only on successful conclusion of the Proceedings as detailed in the case specific loan agreements. This fee is expressed as a percentage of the Claim Proceeds obtained by the Borrower and may also specify a specific minimum monetary value. The Claim Proceeds shall also encompass any future earnings by the Borrower's client that are directly attributable to the Proceedings.

3

**IT IS HEREBY AGREED AS FOLLOWS:**

<u>General Provisions:</u>

1. Headings in this Agreement are inserted for convenience only and shall be ignored in construing this Agreement.

2. Unless the context otherwise requires:

    2.1 words denoting the singular include the plural and vice versa;

    2.2 words denoting one gender shall include the other gender.

3. References to statutes and/or statutory provisions shall be construed as referring to such statutes or statutory provisions as replaced, amended, extended or consolidated or any equivalent statutes or legislation applicable to the Borrower.

4. References to the liquidation, administration, insolvency, bankruptcy or other similar incapacity of any person or entity shall be construed to include the equivalent proceedings or occurrence in any the United States of America, the United Kingdom and any other relevant jurisdiction.

5. References to clauses are to the clauses to this Agreement or to the CSLA.

6. References to this Agreement shall be construed as referring to this Agreement as amended or varied in accordance with its terms.

7. "Writing" or "written" shall include facsimile but shall not include electronic mail.

8. Any references herein to any document shall be construed as a reference to such document as the same may be amended supplemented novated or assigned.

<u>The Loan and its purpose.</u>

9. The Lender shall make available to the Borrower the Loan detailed in the CSLA upon and subject to the terms and conditions of this Agreement and as detailed in the CSLA for the exclusive purpose of assisting the Borrower to defray the costs as detailed in clause 10 below.

10. On release of funds from the 1st Class Legal Client Account in accordance with this clause and the CSLA, the Loan shall be used only for the following purposes:

    10.1 Payment of costs incurred in the Proceedings.

    10.2 Payment of properly incurred costs incurred by the Borrower's client or

    10.3 Payment of the Funded Premium and/or applicable guarantees as required by the Lender.

11. It is hereby acknowledged and agreed that unless it has been specifically agreed to in writing between the parties to this agreement:

4

11.1 neither the Borrower nor the Borrower's client noted in each CSLA has assigned, and will not assign, by this Agreement or otherwise, (whether absolutely or conditionally) to the Lender, any guarantor or any other person, any cause, or causes, of action vested in the Borrower or Borrower's client that are the subject matter of the Proceedings;

11.2 neither the Borrower nor the Borrower's client noted in each CSLA has granted, and will not grant, by this Agreement or otherwise, to the Lender, any guarantor or any other person, any charge, lien, or other encumbrance in the nature of a security interest, over the whole or any part of the Claim Proceeds;

11.3 the Borrower and Borrower's client have full conduct and control of the Proceedings noted in the CSLA.

11.4 Nothing herein shall require Borrower to take any action or position that is inconsistent or contrary to, or modify or amend in any respective rights and obligations of Borrower and Borrower's client under the Retainer Agreement between Borrower and the client. Nothing herein shall impose any obligation, expense, responsibility or liability on Borrower's client, except as may be set forth in a separate agreement between Lender and Borrower relating to the sale of the BCCS.

<u>Drawdown of the Loan.</u>

12. The Loan shall be made by the Lender to the Borrower as detailed in the CSLA.

12.1 The Borrower may not deliver the Drawdown Request unless the Lender has received all of the confirmations and related information as listed in Clauses 17 to 26 inclusive in form and substance satisfactory to the Lender. The Lender will only be obliged to advance the Loan if on the proposed Drawdown Date no Event of Default or Potential Event of Default is continuing or would result from the proposed advance and the representations to be made by the Borrower under Clause 9 are true in all material respects.

12.2 Subject to Clause 12.1, the Lender shall make the advance of the Loan on the Drawdown Date as follows:

12.2.1 by paying to the Insurer(s) and guarantee providers an amount equal to the Funded Premium and/or guarantee fees as required in each specific case and detailed in each case specific schedule to this agreement and

12.2.2 by paying the balance of the Loan, after deducting the payments made under 10.3; above, into the 1st Class Legal Client Account, to be applied as provided in this Agreement and the case specific schedules to this agreement.

12.2.3 No amounts shall be released from the 1st Class Legal Client Account except in accordance with the remainder of this clause 10.

12.3 The Borrower may request the release of funds from the 1st Class Legal Client Account that is not pre-arranged and detailed in the case specific schedule to this agreement from time to time by delivering a duly executed Release Request to the Lender, not later than 9 am 5 Business Days (or on such later date as the Lender may determine in its sole discretion) prior to the proposed Release Date.

12.4 No release of funds pursuant to a Release Request shall be made unless the Release Request is accompanied by a bill of costs, invoice or such other written confirmation as is determined by the Lender from the Borrower and it provides to the Lender such further details with respect to the unscheduled release of funds as the Lender may reasonably request and such further details are satisfactory to the Lender in its sole discretion.

12.5 Upon the conditions of 17 to 26 inclusive being satisfied, the Lender shall instruct the Account Bank to pay to the Borrower such unscheduled sums as the Lender has agreed to in its sole discretion.

Loan Cost.

13. The case specific schedule(s) to this agreement set out the terms of the remuneration to be paid by the Borrower to the Lender at or within a maximum of 30 days from the receipt by the Borrower of its contingent fee payable from any Claims Proceeds.

13.1 If the Borrower fails to pay the whole or any part of any sum payable under this Agreement or a CSLA on the due date such as, but not limited to, the remuneration due to the Lender following the collection of Claim Proceeds in any Proceeding as specified in a CSLA, the Borrower shall pay interest on the amount unpaid at the rate of fifteen percent per annum from the due date until the date of actual payment and whether before or after demand or judgment. Such interest shall be calculated on a day to day basis and on a year of 365 days.

13.2 All sums payable by the Borrower hereunder or flowing from a CSLA shall be paid without set-off, deduction or withholding whatsoever, provided that in the event that the Borrower is required under applicable law to make any withholding from any sum payable hereunder, it shall do so and Lender shall be responsible for the payment of any taxes or other fees with respect to such amount.

Loan Repayment

14. The Borrower shall repay solely from, and as it receives, its contingent fee from the claims Proceeds, an amount equal to 10% of the Claim Proceeds from the underlying Legal Proceedings as detailed in the CSLA. In no event shall Borrower be required to repay any amounts in excess of such amounts. Notwithstanding anything to the contrary in this Agreement, in no event shall Borrower or any partner or shareholder of Borrower be liable to Lender for any amounts in excess of 10% of the Claims Proceeds, plus any interest that may accrue for late payment. Lender acknowledges and understands that, in the event the amount of the loan exceeds 10% of the Claims Proceeds, it will not be entitled to recover the deficiency from Borrower or any other person. Apart from the express representations and warranties in this Agreement, neither Borrower nor any other person has given any warranties or provided any guarantees as to the potential success of the Proceedings or the amount, if any, of the Claims Proceeds. Borrower expressly disclaims any implied warranties or any guarantees as to the results of the proceedings. Lender understands that there is inherent risk in all litigation and accepts that risk in making the loan.

Payments by the Borrower.

15. All payments to be made by the Borrower under this Agreement or the CSLA shall be made on the due date to 1st Class Legal Statutory Trust Client Account (or such other account as the Lender may specify in writing) in same day funds.

6

16. If any payment should become due on a day which is not a Business Day the due date for such payment shall be extended to the next Business Day unless the next Business Day is in the following calendar month in which case the due date shall be the preceding Business Day.

Conditions Precedent

17. The Borrower shall provide a written statement to the Lender confirming that the case that is the subject matter of each loan under this agreement and that is specified in the case specific schedules(s) to this agreement are being conducted by the Borrower on a contingency fee basis. The Borrower shall immediately notify the Lender should the basis on which the Borrower is acting for its client change for whatever reason.

18. The written statement noted at clause 17 above shall also include confirmation from the Borrower that it holds a valid retainer agreement with its client to conduct the Proceedings and the Borrower shall immediately advise the Lender should such retainer cease or be materially changed at any time and for any reason.

19. The Lender has purchased or shall purchase shares in the Borrower's client company relating to the BCCS and as detailed in the CSLA and each party acknowledges that by doing so the Lender becomes fully entitled to be provided with such client attorney information necessary to be informed about the Proceeding since the Lender then becomes part owner of the Borrower's client. The Borrower shall facilitate the completion of all necessary documents to allow the BCCS to be completed in a timely fashion. The purchase price paid by Lender to Borrower's client for the BCCS shall be non-refundable. The purchase price applicable shall be specified in each CSLA but shall not exceed a sum of USD 10,000.

20. In accepting this funding of expenses and fees for Borrower's client, these conditions shall apply: (1) Borrower owes its client Borrower's objective, independent professional judgment which cannot be interfered with or compromised; (2) Borrower cannot allow Lender to consider, direct or become involved in strategies for the litigation; (3) Lender cannot interfere with Borrower's obligation to provide its client with impartial, unbiased advice; (4) Borrower's client must consent in writing to the loan.

Warranties.

The Borrower represents and warrants as follows.

21. The Proceedings

    21.1 To the best of the knowledge and belief of the Borrower, Borrower's client has not assigned (whether absolutely or conditionally), charged or created any encumbrance over, to or in favor of any third party, any cause, or causes, of action vested in the Borrower's client that are the subject matter of the Proceedings as noted in the CSLA or;

    21.2 granted to any third party any Security Interest, over the whole or any part of the Claim Proceeds whether absolutely or conditionally other than as detailed in the retainer between the Borrower and its client and noted in the CSLA and except to the extent provided in the Exclusive License Agreement between Borrower's client and the owner of the patents at issue, a copy of which has been provided to Lender.

21.3 the Borrower has informed the Lender of all Relevant Facts in relation to each CSLA or has provided to the Lender all Information and documentation requested by the Lender from which Lender may determine the Relevant Facts and

21.4 in Borrower's reasonable judgment, the prospects of success in the Proceedings are good taking into consideration all the information known to the Borrower at that time, and

21.5 Borrower has no reason to believe the Borrower's client has not disclosed to the Borrower all Relevant Facts and provided to the Borrower any information or documentation requested by the Borrower.

21.6 The Borrower has disclosed to the Lender all material facts and matters of which the Borrower is aware beyond publicly available information relevant to the financial condition of any party against whom the Proceedings have or will be taken.

21.7 The Borrower's client as noted in each CSLA has agreed in the Retainer Agreement, a copy of which has been provided to Lender, to pay Borrower a contingent fee of between 35% and 42% of any Claim Proceeds.

22. Constitutional

22.1 The Borrower is duly incorporated under the laws of the state in which it is incorporated.

22.2 All statutory books and registers of the Borrower have been properly kept and no notice or allegation that any of them is incorrect or should be rectified has been received.

22.3 No officer, employee or agent of the Borrower is authorized to bind the Borrower to any transaction not in ordinary and usual course of the Borrower's business.

23. The entry into and performance of this Agreement

23.1 The entry into and performance of the Finance Documents by the Borrower does not and will not conflict with the Borrower's Memorandum and Articles of Association, any law, statute, regulation applicable to or other instrument binding on the Borrower or on any of its assets.

23.2 All necessary corporate, shareholder or other action has been taken to authorise the execution, delivery and performance of the Finance Documents.

23.3 No limitation on the power of the Borrower or on the powers of its Shareholders or Partners shall be exceeded as a result of the drawdown of the Loan.

23.4 The obligations expressed to be assumed by the Borrower under the Finance Documents are legal, valid, binding and enforceable obligations.

23.5 The Lender shall have the right to conduct such reasonable audit and review of the accounts and related documentation of the Borrower as it relates to the Loan as it sees fit.

24. Solvency and good standing of the Borrower

24.1 The Borrower is not insolvent within the meaning of the relevant insolvency law of the United States or any other insolvency legislation applicable to the Borrower.

24.2 The Borrower is not unable to pay its debts as and when they fall due and has not and does not intend to suspend or stop making payments to all or any class of its creditors.

8

24.3 No receiver, administrative receiver or administrator has been appointed nor any notice given, petition presented or order made for the appointment of any such person over the whole or any part of the assets or undertaking of the Borrower.

24.4 No petition has been presented, no order has been made and no resolution has been passed for the winding up of the Borrower or for the appointment of a liquidator or provisional liquidator of the Borrower.

24.5 No distress, execution, or other process, has been levied in respect of the Borrower which remains un-discharged nor is there any unfilled or unsatisfied judgment or court order outstanding against the Borrower.

25. Litigation and Investigations

25.1 Save for the Proceedings specified in the CSLA, to the knowledge of the Borrower, the Borrower's client is not engaged in any litigation affecting the business or assets of the Borrower's client and so far as the Borrower is aware no litigation is threatened or pending against the Borrower's client and the Borrower does not know of any facts which are likely to give rise to the same.

25.2 To the best of the knowledge of the Borrower, there are no claims pending or threatened against the Borrower's client by any employee or workman or third party in respect of any accident or injury which are not fully (save for any policy excess) covered by insurance and so far as the Borrower is aware there are no facts which are likely to give rise to the same.

25.3 To the best of the knowledge of the Borrower, there are not pending or in existence any investigations or inquiries by or on behalf of any governmental or other body in respect of the affairs of the Borrower's client.

26. The assets of the Borrower

26.1 Save for any reservation of title provisions in any terms and conditions of sale of any supplier of the Borrower the Borrower is the full legal and beneficial owner of and has good and marketable title free from any mortgage, charge, lien or other encumbrance to all the tangible assets included in the Accounts and any assets acquired since the Accounts Date and all other assets used by the Borrower except in each case for those disposed of since the Accounts Date in the usual and proper course of the Borrower's business.

26.2 There is no charge, lien or other encumbrance in the nature of a security interest (except a lien arising by the operation of law in the ordinary course of business) on the whole or any part of the present or future assets of the Borrower

27. The Accounts of the Borrower

27.1 The Accounts of the Borrower have been prepared in accordance with applicable law and GAAP and truly and fairly represent the financial position of the Borrower at the Accounts Date and the profit and loss of the Borrower for the financial year ended on the Accounts Date.

27.2 The Accounts are not affected by any unusual or non recurring items or any other factor that would make the financial position shown in the Accounts unusual or misleading in any material respect.

9

27.3 The Accounts have been filed and laid before the company in general meeting in accordance with the requirements of applicable law.

27.4 The Accounts have been prepared on a basis consistent with the accounts of the Borrower for the prior accounting period without any change in accounting policies used save to reflect any changes in GAAP.

28. Changes since the Accounts Date

28.1 Since the Accounts Date, there has been no material adverse change in the business or financial condition of the Borrower since the date of the Accounts.

28.2 Since the Accounts date, no dividend or other distribution of profits or assets has been, or agreed to be, declared or paid by the Borrower.

28.3 Since the Accounts Date, no shareholder resolutions of the Company have been passed other than as routine business at the annual general meeting.

28.4 Since the Accounts Date no Event of Default or Potential Event of Default has occurred.

28.5 Since the Accounts Date there are no undisclosed facts which if disclosed could be expected to affect the decision of the Lender to make available the Loan to the Borrower.

Representations and warranties.

27 The representations and warranties contained in clauses 19 to 26 inclusive shall survive the execution of this Agreement and shall be deemed to be repeated daily by the Borrower until repayment in full of all Loans as detailed in the case specific schedule(s) to this agreement and payment of all other sums due pursuant to this Agreement.

28 Each of the Warranties is separate and, unless specifically provided, is not limited by reference to any other Warranty or any other provision of this Agreement.

29 Warranties qualified by the expression "so far as the Borrower is aware" or any similar expressions are deemed to be given on actual knowledge of the Borrower.

The Borrower's Obligations

30 The undertakings in this clause shall remain in force until repayment in full of the Loan(s) as detailed in the case CSLA and payment of any other sum due pursuant to this Agreement or the CSLA provided, however, that the repayment shall be limited to 10% of the Claim Proceeds and neither Borrower nor any other person shall be liable for any deficiency.

The Proceedings:

31 The Borrower undertakes as follows:

31.1 Except as may be provided in or arise from the Retainer Agreement, the Borrower shall not assign (whether absolutely or conditionally), charge, or create any Security Interest over, to or in favour of any third party any cause, or causes, of action vested in the Borrower that are the subject matter of the Proceedings or grant to any third party any Security Interest, over the whole or any part of the Claim Proceeds and/or ATE Policy and/or ATE Proceeds or assign any of the foregoing (whether absolutely or conditionally).

31.2 The Borrower shall pursue the Proceedings diligently and in a timely manner on behalf of the Borrower's client in accordance with the Retainer Agreement.

31.3 The Borrower shall inform the Lender without delay and in any case within 10 working days of all Relevant Facts of which the Borrower becomes aware related to this Agreement or any CSLA that have not previously been disclosed to the Lender and shall provide to the Lender any information or documentation reasonably requested by the Lender subject to the provisions of maintaining client attorney privilege.

31.4 The Borrower shall:

31.4.1 keep under constant review the Borrower's clients prospects of success in the Proceedings referred to in each CSLA;

31.4.2 keep Lender informed of any material developments in the Proceedings or as to other matters that might affect the outcome of the Proceedings of which Borrower is aware;

31.4.3 notify the Lender forthwith of any changes to or termination of the Retainer Agreement in relation to each CSLA.

31.4.4 take all necessary steps to cause to be paid directly to the themselves their contingent fee portion of any Claim Proceeds flowing from the Proceedings and shall take all necessary steps to cause to be paid directly to the Lender any ATE Proceeds.

31.4.5 In the event that any Claim Proceeds and/or ATE Proceeds are paid directly to the Borrower, the Borrower shall immediately pay to the Lender any sum due by the Borrower to the Lender pursuant to this Agreement or each CSLA from any such Claim Proceeds and/or ATE Proceeds and until such payment will hold such proceeds on trust for the Lender.

Confidentiality

32 The Lender undertakes to keep strictly confidential and, except as expressly provided herein, not to disclose to any person, all information that it has acquired from the Borrower about the Borrower, the Borrower's Client, the matters at issue in the Proceedings, or the Proceedings themselves and to use such information solely for the purposes contemplated by this Agreement.

33 The Lender may disclose any information that it is otherwise required to keep confidential:

33.1 to such professional advisers, consultants and employees or officers as are reasonably necessary to advise on the Agreement or to facilitate the performance thereof provided that the Lender procures from each such person an agreement in writing satisfactory to the Borrower that the people to whom the information is disclosed keep it confidential as if they were the Lender;

33.2 with the prior written consent of the Borrower;

33.3 to the extent that disclosure is required by law or to protect the Lender's interest in any legal proceedings but in such circumstances the Lender shall use reasonable endeavours to

11

consult with the Borrower and to take into account any reasonable requests the Borrower may have in relation to the disclosure before making it;

33.4      in connection with preserving or enforcing its rights under the Finance Documents.

33.5      to any co-funder or assignee or potential co-funder or assignee of the Lender.

<u>Events of Default</u>

34    Upon the occurrence of an Event of Default, and at any time thereafter while such an event is continuing, the Lender may at its sole discretion by written notice to the Borrower, providing a 30 day notice period and opportunity to cure, terminate this Master Loan Agreement or the applicable CSLA.

35    The following are Events of Default:

35.1      the Borrower fails to pay any amount payable under this Agreement or any CSLA upon its due date;

35.2      any Warranty made by the Borrower in this Agreement is or proves to have been incorrect in any material respect when made;

35.3      the Borrower fails to comply with any provision of this Agreement and the failure to comply has a materially adverse effect on the Lender;

35.4      it becomes unlawful or impossible or contrary to the terms of any consent, authority or other permission for the Borrower to perform or to continue to perform any of its obligations under this Agreement;

35.5      it becomes unlawful for the Lender to make the Loan(s) detailed in the CSLA or for the Loan to be outstanding;

35.6      the Lender is advised in writing by the Borrower that the Borrower's clients prospect of success in the Proceedings as detailed in the CSLA have reduced for whatever reason to a point at which, on balance, the Borrower would not have accepted the case on a contingency fee basis had the matter been put to the Borrower with such prospects of success;

35.7      the Borrower is insolvent within the meaning of the applicable insolvency laws of the United States of America;

35.8      the Borrower is unable to pay its debts as and when they fall due and/or has or intends to suspend or stop making payments to all or any class of its creditors;

35.9      a receiver, administrative receiver or administrator is appointed or any notice given, petition presented or order made for the appointment of any such person over the whole or any part of the assets or undertaking of the Borrower;

35.10      a petition is presented, order made or resolution passed for:
         35.10.1 the winding up, dissolution or liquidation of the Borrower other than for the purpose of a reconstruction or amalgamation the terms of which have previously been approved by the Lender in writing;

35.10.2 the appointment of a liquidator or provisional liquidator to the Borrower;

35.10.3 the making of an Administration Order against the Borrower;

35.10.4 distress, execution or other process is levied in respect of the Borrower which is not discharged within 21 days;

35.11 any steps are taken to repossess any goods in the possession of the Borrower under any hire purchase, conditional sale, leasing, retention of title or similar agreement;

35.12 the Borrower fails to comply with any environmental or other law applicable to the Borrower or fails to renew or comply with any license, permit, consent or other authorisation required for the conduct of its business or any such license, permit, consent or other authorisation is revoked, cancelled or suspended;

35.13 there is a change in the control of the Borrower;

35.14 any event (or series of events) occurs which in the sole opinion of the Lender is likely to have a material adverse effect on the ability of the Borrower to comply with the Borrower's obligations under this Agreement or on the financial condition, business or prospects of the Borrower.

35.15 the Borrower fails to pay when due any material indebtedness (or any arrangement having an effect analogous to indebtedness, including finance leases) of the Borrower owed to any person other than the Lender, or any such indebtedness or other arrangement is accelerated, or becomes capable of being accelerated, prior to its scheduled maturity;

35.16 the Borrower repudiates or evidences an intention to repudiate any Finance Document or alleges that any of its obligations thereunder are not binding upon it;

<u>Upon termination of this Agreement pursuant to clause 35:</u>

36 the Loan, any interest accrued thereon (if applicable), and all other amounts payable under this Agreement shall become immediately payable without further demand, but only as and to the extent that Borrower receives its contingent fee based on Claims Proceeds collected in respect of the Proceedings.

<u>Notices</u>

37 Every notice and other communication under this Agreement shall unless otherwise stated be in writing and shall be sent to or given at the registered office of the intended recipient of the notice or other communication or to any address or telex or facsimile number as either the Lender or the Borrower may from time to time notify to the other. Notices intended for the Lender shall be sent or given at the registered office of 1st Class Legal (I.S.) Limited.

38 Every notice or other communication shall be deemed to have been received:
  38.1 if delivered personally, at the time of delivery
  38.2 if sent by facsimile or telex, at the time of transmission
  38.3 if sent by pre-paid first class post, registered post or recorded delivery three Business Days from the date of posting.

13

39 To prove service, it is sufficient to prove that the notice was transmitted by facsimile to the facsimile number of the intended recipient or, in the case of post, that the envelope containing the notice was properly addressed, stamped and posted.

Miscellaneous

40 <u>General</u>

    40.1    Any representation or warranty given or made by the Insurer or any other third party to the Borrower relating to or connected with this Agreement has not been given or made with the authority (whether express or implied) of the Lender.

    40.2    The Borrower acknowledges that it has not been induced to enter into this Agreement by, nor relied upon, any representation or warranty given or made by 1st Class Legal (I.S.) Limited, the Insurer or any other third party to the Borrower relating to or connected with this Agreement;

    40.3    The Borrower irrevocably and unconditionally waives any right it may have to claim damages or to rescind this Agreement by reason of any representation or warranty given or made by 1st Class Legal (I.S.) Limited, the Insurer or any other third party to the Borrower relating to or connected with this Agreement.

    40.4    The Borrower acknowledges and agrees for the purposes of any applicable United States or United Kingdom statute that clauses 41.1 to 41.3 are reasonable.

<u>Assignment</u>

41 The Borrower may not assign or transfer any of its rights or obligations under this Agreement.

42 The Lender may at any time assign or transfer any of its rights under this Agreement.

<u>Cumulative rights and remedies</u>

43 Unless specifically provided to the contrary, rights and remedies arising under this Agreement are cumulative and do not exclude rights provided by law.

<u>Exercise of discretion</u>

44 Any discretion or power which may be exercised or any determination which may be made hereunder by the Lender may (save as otherwise provided herein) be exercised or made in its absolute and unfettered discretion and it shall not be obliged to give reasons for such exercise or determination.

<u>Fees and expenses</u>

45 Unless otherwise provided, all costs in connection with the negotiation, preparation, execution and performance of this Agreement and any documents referred to in it shall be borne by the party that incurred the costs.

<u>Joint Borrowers</u>

46 Where the Borrower proposes to enter into an agreement to share fees with another firm of attorneys in relation to the Proceedings the Lender must agree to this in writing and if it does so the obligations and liabilities of the Borrowers under this Agreement are joint and several.

Rights of Third Parties

47 For the purposes of any United States or United Kingdom statute this Agreement is not intended to and does not give any person who is not a party to it or any CSLA any right to enforce any of its provisions (other than an assignee of the Lender).

Variation and Waiver

48 Any variation of this Agreement shall be in writing and shall be signed by a duly authorised representative on behalf of the parties.

49 No delay or omission on the part of the Lender in exercising any of its rights powers or privileges under this Agreement shall operate as a waiver thereof nor shall any single or partial exercise of any right power or privilege preclude any other or further exercise thereof or the exercise of any other right power or privilege.

50 Any waiver of any right under this Agreement shall only be effective if it is in writing and shall apply only to the party to whom it is addressed and to the circumstances for which it is given and shall not prevent the party who has given the waiver from subsequently relying on the relevant provision.

Data Protection

51 The Lender shall process all of Borrower's personal data disclosed or otherwise made available to it by the Borrower in accordance with applicable data protection law of both the United States of America and the United Kingdom;

52 The Lender may collect the Borrower's personal data, including its name, address, and details of the Proceedings as specified in the CSLA in order to evaluate and monitor the Loan, to enforce the Lender's rights under the Finance Documents, and to comply with the Lender's obligations as funders from time to time.

Whole Agreement

53

    53.1 This Agreement supersedes and extinguishes any representations previously given or made, and/or any warranties previously given or made other than as expressly set out as a Warranty in this Agreement;

    53.2 Each of the parties acknowledges to the other (and shall execute this Agreement in reliance upon such acknowledgment) that it has not been induced to enter into this Agreement by, nor relied upon, any misrepresentation or warranty other than the Warranties contained in this Agreement;

    53.3 Each party irrevocably and unconditionally waives any right it may have to claim damages or to rescind this Agreement by reason of any misrepresentation whatsoever and/or by reason of any warranty not set out in this Agreement.

    53.4 It is noted that this Agreement should be read in conjunction with any CSLA which form part thereof.

53.3 Each party irrevocably and unconditionally waives any right it may have to claim damages or to rescind this Agreement by reason of any misrepresentation whatsoever and/or by reason of any warranty not set out in this Agreement.

53.4 It is noted that this Agreement should be read in conjunction with any CSLA which form part thereof.

<u>Jurisdiction:</u>

54 It is agreed between the parties that in the first instance any dispute arising from or in relation to this agreement shall be the subject of non-binding mediation in the United States within a period of 90 days from the dispute arising and being advised by either party to the other in writing.

55 In the event that the non-binding mediation in the U.S. does not settle the dispute to the satisfaction of both the parties any litigation that follows shall be subject to the laws of England and Wales.

IN WITNESS whereof the parties have executed this Agreement and delivered it as a deed the day and year first above written.

EXECUTED as a DEED by the Borrower acting by a director/partner and a director/partner both of whom are duly authorised so to act and to sign this deed on behalf of the firm of Niro, Haller & Niro.

Signature of First Director/Partner — *Shareholder - President*    Signature of Second Director/Partner — *SHAREHOLDER - TREASURER*

Witnessed by:
Name: DEAN NIRO                    Signature: D-DN
Occupation: Attorney
Address: 181 West Madison, Suite 4600, Chicago, IL 60602

EXECUTED as a DEED by 1st Class Legal (I.S.) Limited acting by Bob Gordon, director, and Eibhlin Gordon, director, both of whom are duly authorised by 1st Class Legal (I.S.) Limited so to act and to sign this deed.

Signature of First Director         Signature of Second Director

Witnessed by:
Name: Claire Ball                   Signature: CMBall
Occupation: Administrator
Address: Stapleton House, Stapleton, Nr Dorrington, Shrewsbury SY5 7EF

16

**CASE SPECIFIC LOAN AGREEMENT (CSLA) TO THE MASTER LOAN AGREEMENT BETWEEN 1ST Class Legal (I.S.) Limited and Niro, Haller & Niro dated 15th day of December 2011**
**REFERENCE: 1CL/NIRO/01**

| Name of Borrower | Niro, Haller and Niro |
|---|---|
| Name of Borrower's Client(s) | |
| Registered address of Borrower's client & key contact person details. | |
| The Proceedings including details of opponents and details on ability of opponent to pay an award. | |
| Any case specific additional information provided by the Borrower. | |

| Borrower's costs. | USD |
|---|---|
| Borrower's client costs & disbursements. | USD |
| The Funded Premium and/or applicable guarantees as required by the Lender. | USD |
| Total Facility Amount | USD |
| Total Facility distribution and payment schedule. | As per the attached budget which forms part of and should be read in conjunction with this agreement. |
| Win Only Award Fee Percentage | 10 % of the Gross Proceeds obtained from the Proceedings. Such Gross Proceeds to include any additional sums obtained in the Proceedings for such time period and amount as they are provided to the Borrower's client. |
| 1st Class Legal (I.S.) Limited Statutory Trust Client Account Borrower Reference. | |
| Borrower client reference. | |
| Borrower Accounts Date. | |
| Agreed detailed budget attached – forms part of this agreement. | |
| BCCS Issues: value and amount of shares in the Borrower's client company purchased or to be purchased by the Lender. | |

17

This schedule and the loan related thereto shall incorporate shall incorporate all the terms of the Master Loan Agreement between the parties unless specifically amended in writing in this Case Specific Loan Agreement.

IN WITNESS whereof the parties have executed this Agreement and delivered it as a deed the day and year first above written.

EXECUTED as a DEED by the Borrower acting by        a director/partner and a director/partner both of whom are duly authorised so to act and to sign this deed on behalf of the firm of Niro, Haller & Niro.

Signature of First Director/Partner        Signature of Second Director/Partner

...........................................        ...........................................

Witnessed by:

Name:_____        Signature:_____

Occupation:_____

Address:_____

EXECUTED as a DEED by 1st Class Legal (I.S.) Limited acting by Bob Gordon, director, and Eibhlin Gordon, director, both of whom are duly authorised by 1st Class Legal (I.S.) Limited so to act and to sign this deed.

*[signature]*        *[signature]*

Signature of First Director        Signature of Second Director

Witnessed by:

Name: *Claire Ball*        Signature: *CBall*

Occupation: *Administrator*

Address: *Stapleton House, Stapleton, Nr Dorrington, Shrewsbury SY5 7EF*

18